UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADAM CONTI,

                                Plaintiff,

        -against-

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY,

                                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/14

12 Civ. 5827 (AT)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, District Judge:

In this action, Plaintiff, Adam Conti, asserts claims against Defendant, United States

Department of Homeland Security ("DHS"), under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and the

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  DHS moves for summary judgment pursuant

to Federal Rule of Civil Procedure 56.  Plaintiff cross moves for deposition discovery, or,

alternatively, an *in camera* review of documents and an award of attorneys' fees and costs.  For

the reasons stated below, the motion for summary judgment is GRANTED in part and DENIED

in part and Plaintiff's cross motion is DENIED without prejudice.

**BACKGROUND**

I.  The Parties

DHS is an agency of the United States with the primary responsibility of protecting the

United States from terrorist attacks, man-made accidents, and natural disasters.  Plaintiff was a

former Technical Enforcement Officer and decorated sixteen-year veteran within what is now

DHS.  Conti Decl. ¶ 3.  Plaintiff designed, implemented, and maintained all advanced security

systems protecting the DHS New York Field Office.  *Id.*  While employed at DHS, Plaintiff

applied for and received permission to engage in outside employment.  *Id.* at ¶ 4.  Plaintiff

alleges that adverse employment actions were taken against him in retaliation after Plaintiff

made "numerous whistle-blowing disclosures regarding inadequacies that put [DHS'] staff and the general public at risk of personal harm." Compl. ¶ 14.

Broadly, Plaintiff criticized DHS' investigation into a home theft ring ("the Gypsy Investigation"), which allegedly placed DHS personnel into sensitive situations without adequate back-up. *Id.* at ¶¶ 17, 18. The general public was also allegedly placed at risk of harm because of the way the investigation was handled. *Id.* at ¶ 17. Additionally, Plaintiff disclosed Port Newark's alleged vulnerability to domestic and foreign terrorist threats. *Id.* at ¶¶ 19, 20. The Port Authority Police Department, which Plaintiff criticized for its inability to properly secure the port, allegedly made false complaints about Plaintiff to DHS. *Id.* at ¶ 20. The complaints triggered an investigation of Plaintiff for alleged conflicts of interest (Plaintiff's outside employment included servicing a Port Authority tenant, FAPS, Inc., that processes and/or stores vehicles after their removal from ships). *Id.*; Conti Decl. ¶¶ 8, 11. Plaintiff alleges that no conflict of interest existed because his client "was not an importer," so "there would be no conflict." Conti Decl. ¶ 11.

DHS' Office of Professional Responsibility ("OPR") is tasked with investigating employee malfeasance and criminal activity within DHS. Compl. ¶ 27. OPR deputized Plaintiff's supervisor, Steven Kucan, with investigating Plaintiff. Conti Decl. ¶ 5. Kucan transferred Plaintiff and changed his job duties. *Id.* at ¶ 7. Ultimately, Plaintiff was forced to move boxes of paper from one office to another and was provided no information as to why he was demoted or when it would end. Compl. ¶ 24. As part of Plaintiff's downgraded status, Kucan took control of all of Plaintiff's keys, giving Kucan special access to DHS premises. Conti Decl. ¶ 14. Unbeknownst to Plaintiff, Kucan used Plaintiff's keys to steal DHS property.[1]

---

[1] Kuncan's theft was later discovered and he pleaded guilty. Conti Decl. ¶ 15. On January 24, 2014, Kuncan was

*Id.* Plaintiff resigned from DHS on October 6, 2008, after months of adverse employment actions against him. *Id.* at ¶ 16.

## II.  The Merit System Protection Board Litigation

Plaintiff is now litigating what he believes to be a constructive discharge from DHS. Compl. ¶¶ 24, 25. The litigation is pending before the Merit Systems Protection Board ("MSPB"). *Id.* at ¶ 25. Plaintiff has spent much of the litigation trying to get DHS to produce documents. *Id.*

## III.  The FOIA Requests

On April 12 and 13, 2011, Plaintiff, through counsel, sent FOIA requests to the FOIA office of DHS, Immigration and Customs Enforcement ("ICE FOIA"), seeking:

> (1) Exact copies of, and any and all documents and recordings that refer or relate to the investigatory case file and/or records of investigation of Peter Quaglia, former SAIC NY-Supervisory Special Agent, initiated by Raymond Losak from 2006 through the present.

> (2) Exact copies of, and any and all documents and recordings that refer or relate to the investigatory case file and/or records of investigation of Karen Pace, SAIC NY-Supervisory Special Agent, from 2006 through the present.

> (3) Exact copies of, and any and all documents and recordings that refer or relate to the investigatory case file and/or records of investigation of Steven Kucan, SAIC NY-Supervisory Special Agent, from 2006 through the present.

> (4) Exact copies of, and any and all documents and recordings that refer or relate to the investigatory case file and/or records of investigation of James Enderle, former SAIC NY-Supervisory Special Agent, from 2006 through the present.

> (5) Exact copies of, and any and all documents and recordings that refer or relate to the investigatory case file and/or records of investigation of Mona Forman, JFK Airport-Associate SAIC, from 2006 through the present.

> (6) Exact copies of, and any and all documents and recordings that refer or relate to the investigatory case file and/or records of investigation of Peter Smith, former

---

sentenced by Judge Esther Salas in the United States District Court for the District of New Jersey. Ferdinand letter, Jan. 28, 2014, ECF No. 50.

SAIC NY-Supervisory Special Agent in Charge, from 2006 through the present.

(7) Exact copies of, and any and all documents and recordings that refer or relate to administrative cases and/or complaints initiated by Adam Conti from 2006 through the present.

(8) Exact copies of, and any and all documents and recordings that refer or relate to the Office of Professional Responsibility case file of Steven Kucan, SAIC NY-Supervisory Special Agent, from 2006 through the present, including, but not limited to, any complaints regarding Steven Kucan.

(9) Exact copies of, and any and all documents that refer or relate to communications between the Department of Homeland Security, including Immigration and Customs Enforcement, and the Port Authority of New York and New Jersey regarding Adam Conti from 2006 through the present.

(10) Exact copies of, and any and all documents that refer or relate to intra-office communications at the Department of Homeland Security, including, Immigration and Customs Enforcement, regarding Adam Conti.

(11) Exact copies of, and any and all documents that refer or relate to DHS Office of Inspector General, Office of Investigations, and/or Office of Professional Responsibility investigations regarding Steven Kucan.

(12) Exact copies of, and any and all documents that refer or relate to DHS Office of Inspector General, Office of Investigations, and/or Office of Professional Responsibility investigations regarding Adam Conti.

(13) Exact copies of, and any and all documents and recordings that refer or relate to FAPS, Inc., located at 371 Craneway Street, Newark, New Jersey.

Law Decl. ¶¶ 22, 23; Exs. 2, 3. ICE FOIA sought clarification from Plaintiff's counsel as to the

scope of categories 9 and 10, because those requests sought production of a broad range of

communications "regarding" Plaintiff. *Id.* at ¶ 25; Ex. 4. Plaintiff's counsel responded:

[W]e seek communications from the following: (1) Robert Fitsimmons, (2) Monica Padilla, (3) Darren Eng, (4) Edward Bredehoft, (5) Edward Carey, (6) Darlene Line, (7) Riley Dundon, (8) Randy Greenstein, (9) Steven Kucan, (10) Peter Joseph Smith, (11) Mona Forman, (12) Salvatore Dellasandro, (13) Peter Edge, (14) Joseph Palmese, (15) Peter Quaglia, (16) Claudette Fogg Castillo, (17) Betty Eng, (18) Joanne Pavone, (19) James Enderle, (20) Karen Pace, (21) Edith Montegudo, (22) John Bartley, (23) Kevin Omalley, (24) Alan Steinmark, and (25) Hubert Kostrum.

4

Law Decl. ¶ 26; Ex. 4.  ICE FOIA assigned Plaintiff's requests tracking number
2011FOIA7411.  *Id.* at ¶ 24.

    A.   ICE FOIA's Pre-Suit Searches and Responses

Because the majority of Plaintiff's requests sought investigative files and/or records of
investigation relating to individual Immigration and Custom Enforcement ("ICE") employees,
ICE FOIA determined that the ICE Office of Professional Responsibility ("ICE OPR") would
likely possess responsive records, and referred Plaintiff's requests to ICE OPR Headquarters.  *Id.*
at ¶¶ 28, 29.  ICE OPR is responsible for investigating allegations of employee misconduct, and
prepares Reports of Investigation for judicial or management action.  *Id.* at ¶ 28.  ICE OPR
searched the Joint Integrity Case Management System ("JICMS") and, as a result of this search,
located 129 responsive pages.  *Id.* at ¶ 30.  JICMS is a database utilized by ICE OPR, which
contains investigations undertaken by ICE OPR or referrals from ICE OPR in response to
allegations of misconduct by ICE employees.  *Id.*

On May 19, 2011, ICE FOIA released documents responsive to categories 7 and 12 of
Plaintiff's requests (generally speaking, investigative files relating to agency investigations
regarding Plaintiff, and agency investigations of complaints made by Plaintiff) (the "May 2011
ICE Release").  *Id.* at ¶ 31.  The agency determined that fourteen pages would be released in
their entirety and 115 pages would be released with redactions pursuant to Exemption (k)(2) of
the Privacy Act, as well as Exemptions 6 and 7(C) of FOIA, in order "to protect from disclosure
the names, e-mail addresses, social security numbers, home addresses, and phone numbers of
ICE employees and third parties contained within the documents."  Compl. Ex. E.  With regard
to the other investigative files and records requested by Plaintiff, which related to third-party ICE

employees (categories 1-6, 8, and 11), ICE FOIA determined that, absent the consent to disclosure of those third parties, an official acknowledgement of any investigation of those third parties, or an overriding public interest, the agency would neither confirm nor deny the existence of responsive records (known as a *Glomar*[2] response).  Compl. Ex. E; Law Decl. ¶ 31.[3]  ICE FOIA explained that if any records responsive to these eight categories existed, they would be exempt from disclosure pursuant to Exemptions 6 and/or 7(C) of FOIA.  Compl. Ex. E; Law Decl. ¶ 31.

Finally, the May 19, 2011 letter informed Plaintiff that because the agency anticipated that searching for communications responsive to categories 9 and 10 of his requests would require a minimum of twenty-five hours to complete, Plaintiff would be required to make an advance payment in order for the agency to begin searching for documents responsive to those categories.  Compl. Ex. E; Law Decl. ¶ 31.

After receiving payment from Plaintiff, ICE FOIA initiated a search for documents responsive to categories 9 and 10, and assigned this search the new case number 2011FOIA10480.  Law Decl. ¶ 32.  Because these categories requested communications regarding Plaintiff from twenty-five ICE employees who were employed by the Office of Homeland Security Investigations ("HSI"), ICE FOIA forwarded Plaintiff's requests to the HSI Records Disclosure Unit ("RDU").  *Id.* at ¶ 33.  HSI RDU determined that the twenty-five individuals were employed in one of the New York, San Antonio, Newark, or Buffalo Special Agent in Charge ("SAC") offices, or in HSI Headquarters Division 6.  *Id.* at ¶ 36.  HSI RDU

---

[2] The term "*Glomar* response" arises from the CIA's successful defense of its refusal to confirm or deny the existence of records regarding a ship named the Hughes Glomar Explorer in *Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1011 (D.C. Cir. 1976).

[3] The May 19, 2011 letter includes category 12 among the categories of documents for which a *Glomar* response was issued, but this was in error; in fact, the May 2011 ICE Release provided documents responsive to category 12. Law Decl. ¶ 31; Compl. Ex. E.

therefore directed these offices to instruct the named individuals to search for any documents responsive to categories 9 and 10, because responsive documents would most likely be maintained by those individuals in their local field offices. *Id.*

On October 29, 2011, ICE FOIA released documents responsive to categories 9 and 10 of Plaintiff's requests (the "October 2011 ICE Release"), which were collected from the record searches of eight of the individuals identified by Plaintiff. *Id.* at ¶¶ 37-39; Ex. 5. The agency determined that 175 pages would be released in their entirety and 53 pages would be released with redactions pursuant to Exemptions 4, 5, 6, 7(C), and 7(E) of FOIA. Law Decl. ¶ 39; Ex. 5. ICE FOIA applied Exemption 4 to protect contract price information from disclosure; Exemption 5 to protect attorney-client privileged e-mail communications between ICE attorneys and HSI employees; Exemptions 6 and 7(C) to protect names, e-mail addresses, and phone numbers of DHS law enforcement officers; and Exemption 7(E) to protect internal DHS agency codes and case names that constituted law enforcement techniques and procedures. Law Decl. Ex. 5. The October 29, 2011, letter also advised Plaintiff that additional searches for communications relating to categories 9 and 10 of Plaintiff's requests were still ongoing. Law Decl. ¶ 39; Ex. 5.

On November 25, 2011, ICE FOIA advised Plaintiff that with regard to the search for communications responsive to categories 9 and 10 of his requests, no additional responsive records had been located. Law Decl. ¶ 41; Ex. 7. On December 15, 2011, the ICE Office of the Principal Legal Advisor ("OPLA") considered Plaintiff's appeals of ICE FOIA's October 2011 and November 2011 determinations. Law Decl. ¶¶ 42-45; Exs. 8-10. ICE OPLA upheld ICE FOIA's application of Exemptions 6 and 7(C) to protect the privacy interests of third-party individuals, but remanded Plaintiff's FOIA requests to ICE FOIA for additional searches for responsive documents. Law Decl. ¶ 45; Ex. 10. Specifically, Plaintiff was advised "it is likely

7

that additional responsive records may be found in locations the agency has not yet searched, including Homeland Security Investigations." Law Decl. Ex. 10. Upon remand, ICE FOIA assigned a new case number to Plaintiff's requests, 2012FOIA3641. Law Decl. ¶ 46. Over six months later, on June 22, 2012, Plaintiff e-mailed ICE FOIA and inquired when he should expect to receive responsive documents. Compl. Ex. V. By e-mail the same day, ICE FOIA apologized for the delay and advised that it was still awaiting the results of a search for responsive documents. *Id.* Ex. W. By e-mail, also on June 22, 2012, Plaintiff again asked ICE FOIA when he would receive the responsive documents, to which ICE FOIA never responded. *Id.* Ex. X. ICE FOIA did not provide any additional documents to Plaintiff before this lawsuit was filed.

B. ICE FOIA's Post-Suit Searches and Responses

On July 30, 2012, Plaintiff initiated this lawsuit. After the filing of the complaint, ICE FOIA again reviewed Plaintiff's FOIA requests and undertook subsequent searches for responsive records, as well as an additional review of the May 2011 and October 2011 ICE Releases to assess the segregability of non-exempt information from information determined, in those releases, to be exempt from disclosure. Law Decl. ¶ 50. With regard to the seventeen individuals identified by Plaintiff who had not produced records in response to categories 9 and 10 before the lawsuit was filed, ICE FOIA instructed HSI to conduct a new search for their records. *Id.* at ¶ 51. Four of these individuals, who were located at the New York and Newark SAC Offices, conducted searches and provided responsive documents to ICE FOIA. *Id.* at ¶ 52.

Of the remaining thirteen individuals, two had transferred to ICE OPR from ICE HSI. *Id.* at ¶ 53. Therefore, ICE FOIA instructed ICE OPR to direct these two employees to conduct searches for documents responsive to categories 9, 10, and 13 of Plaintiff's requests. *Id.* at ¶ 56. OPR later requested the assistance of the Office of the Chief Information Officer ("OCIO") to

8

pull the personal folders files ("*.pst files*") belonging to those two individuals for the time period specified in categories 9 and 10 of Plaintiff's request. *Id.* at ¶¶ 56, 67. In March 2013, ICE OPLA searched the documents obtained from these two individuals and provided documents responsive to Plaintiff's requests to ICE FOIA for processing. *Id.* at ¶ 68.

Of the remaining eleven individuals, HSI RDU advised ICE FOIA that ten were no longer employed by ICE. *Id.* at ¶ 54. ICE FOIA requested that OCIO/Enterprise Operations Branch collect all *.pst files belonging to each of these ten individuals for the time period of January 1, 2010 through January 31, 2011. *Id.* at ¶ 55. OCIO later notified ICE FOIA that the names of five of the ten individuals who were formerly employed by ICE were not located in the directory of the agency's archived storage system. *Id.* at ¶ 61. As to the five other individuals, OCIO located their *.pst files and provided them to ICE FOIA. *Id.* at ¶ 62. ICE OPLA searched the over 36,000 documents provided by OCIO and identified potentially responsive documents, which ICE OPLA then reviewed individually. *Id.* at ¶ 65. The documents determined to be responsive to Plaintiff's request were subsequently reviewed and processed by ICE FOIA. *Id.* The only remaining individual identified by Plaintiff had previously provided his records to ICE OPR when he became a group supervisor. *Id.* at ¶ 54. ICE FOIA requested that OPR search these records for documents responsive to Plaintiff's requests. *Id.* at ¶ 60. OPR provided the documents it located to ICE FOIA. *Id.* at ¶ 63. ICE OPLA conducted a search for responsive documents, but ultimately located none. *Id.*

With regard to category 13 of Plaintiff's requests, ICE FOIA tasked HSI RDU with a search for records pertaining to FAPS, Inc. *Id.* at ¶ 57. HSI RDU searched the Treasury Enforcement Communications System ("TECS"), which is an electronic investigative case management database used by HSI for storage, tracking, and retrieval of law enforcement

information from a variety of federal, state, and local resources. *Id.* HSI located six pages of responsive documents and provided them to ICE FOIA for processing. *Id.*

On February 14, 2013, ICE FOIA provided a first interim response in Case Number 2012FOIA03461 (the "February 2013 ICE Release"). *Id.* at ¶ 64; Ex. 12. The February 2013 ICE Release provided twenty-five pages obtained from an ICE search of HSI, portions of which were withheld under Exemptions 6 and 7(C) (to protect the names and phone numbers of ICE employees, law enforcement officers, and third-party individuals), and 7(E) (to protect law enforcement case numbers, internal law enforcement database codes and navigation instructions, and law enforcement techniques regarding the handling of seized items and detailing how certain types of sensitive investigations are conducted). *Id.* at ¶ 64; Ex. 12. The February 2013 ICE Release also included a re-processed set of the records provided in the May 2011 ICE Release, because ICE had, upon further review, determined that additional portions of those records could be released. *Id.* at ¶ 64; Ex. 12. The February 2013 ICE Release indicated that ICE continued to search for and process responsive documents. *Id.* Ex. 12.

On March 25, 2013, ICE FOIA provided a second interim response and released additional records (1,531 pages) to Plaintiff (the "March 2013 ICE Release"). *Id.* at ¶ 69; Ex. 13. The agency determined after reviewing the records that portions would be redacted pursuant to FOIA Exemptions 5 (to protect the contents of an e-mail between an attorney within ICE OPLA and clients within OPR), 6 and 7(C) (to protect the names and phone numbers of ICE employees, law enforcement officers, and third-party individuals, as well as statements made by third party individuals and other personal identification information), and 7(E) (to protect law enforcement case numbers, internal law enforcement database codes and navigation instructions, and law enforcement techniques regarding the handling of seized items and detailing how certain types of

10

sensitive investigations are conducted). *Id.* at ¶ 69; Ex. 13. The agency also advised that it was withholding documents responsive to categories 3, 8, and 11 (investigative records and files relating to former ICE employee Steven Kucan) under Exemption 7(A), because the records were compiled for law enforcement purposes and their release could reasonably be expected to interfere with enforcement proceedings. *Id.* at ¶ 69; Ex. 13. In particular, ICE stated that it had "determined that the information you are seeking relates to an ongoing criminal law enforcement investigation." *Id.* Ex. 13. The March 25, 2013 letter advised that if, at some point, Exemption 7(A) were no longer applicable, there might be other exemptions that could protect certain information from disclosure, such as Exemptions 6, 7(C), 7(D), and/or 7(E). *Id.*

On March 26, 2013, ICE FOIA provided a final response to Case Number 2012FOIA03461, confirming the contents of the March 25, 2013 letter. *Id.* at ¶ 70; Ex. 14.

### C. Referral to OIG FOIA

After the March 2013 ICE Release, ICE FOIA referred categories 11 and 12 of Plaintiff's requests, which relate to investigative documents that may be in the possession of DHS Office of the Inspector General ("OIG") Office of Investigations, to the OIG FOIA Unit. Law Decl. ¶ 71; Kuehn Decl. ¶ 4. OIG FOIA determined that categories 11 and 12 sought documents under the control of OIG's Office of Investigations ("INV"), and requested that INV search for responsive documents. *Id.* INV provided OIG FOIA with responsive documents that it had located in the Enforcement Data System ("EDS"), which is a case management system that INV uses to track allegations received and investigations initiated. *Id.* at ¶¶ 5, 6. OIG FOIA also contacted INV's Office of Special Investigations ("SID"), but determined that SID did not maintain any records responsive to Plaintiff's requests. *Id.* at ¶ 6.

As a result of INV's search, with respect to category 12 (investigative documents

11

regarding Plaintiff), OIG FOIA released responsive records to Plaintiff (the "June 2013 OIG Release"). Kuehn Decl. ¶¶ 7, 9; Ex. 1. OIG FOIA determined that some of the information in those records should be withheld pursuant to FOIA Exemptions 6 and 7(C), in order to protect the names and initials of lower-level employees, non-agency employees, and private citizens, and to protect the identities of third parties mentioned or referenced, and any information that could reasonably be expected to identify such individuals. Kuehn Decl. Ex. 1. In the course of searching for documents responsive to category 12, OIG FOIA located a complaint and other documents pertaining to an ongoing law enforcement proceeding relating to third party Steven Kucan. Kuehn Decl. ¶ 7. Because of the pending nature of this law enforcement proceeding, OIG FOIA withheld these documents under FOIA Exemption 7(A). Kuehn Decl. ¶¶ 7, 8; Ex. 1. Included in the June 2013 OIG Release was, for the first time, an Office of Inspector General record in which a complaint against Plaintiff is recorded for alleged "Deliberate Disclosure of Classified/Law Enforcement/National Security Related information." Ferdinand Decl. Ex. A. No other documents or information were produced concerning this investigation.

Also, in the June 2013 OIG Release, OIG FOIA provided a *Glomar* response regarding category 11 of Plaintiff's requests (seeking investigative files and records regarding Steven Kucan) because Exemptions 6 and 7(C) would protect the disclosure of the existence or nonexistence of any documents responsive to category 11 from disclosure. Kuehn Decl. ¶ 8; Ex. 1. OIG FOIA states that any documents covered by OIG FOIA's *Glomar* response, if they exist, would be separate and distinct from those obtained during the agency's search for documents responsive to category 12, with regard to which OIG FOIA asserted Exemption 7(A). Kuehn Decl. ¶ 8.

After the June 2013 OIG Release, OIG FOIA learned that Plaintiff challenged certain

redactions made by the agency. *Id.* at ¶ 10.  OIG considered Plaintiff's objections and determined that it could release a previously redacted date on one document (and did so), but could not disclose any additional information without compromising the identity of the complainant. *Id.* at ¶ 11.

OIG FOIA later reviewed the records the agency had provided to Plaintiff and determined that it could release certain information that it had previously withheld from another document in the June 2013 OIG Release. *Id.* at ¶ 12.  Furthermore, OIG determined that it could release some of the documents previously withheld in the June 2013 OIG Release under Exemption 7(A). *Id.*  Therefore, OIG FOIA made an additional release to Plaintiff consisting of these documents (the "September 2013 OIG Release"). *Id.* at ¶¶ 8, 12; Ex. 2.

D.  ICE FOIA *Vaughn* Indices and Subsequent ICE FOIA Releases

Under the Revised Scheduling Order ("RSO") in this matter dated February 26, 2013, after DHS' document productions to Plaintiff, Plaintiff was to notify DHS of any objections to any redactions in the record.  RSO, Feb. 26, 2013, ECF No. 11.  On April 16, 2013, Plaintiff provided DHS with a spreadsheet of objections to redactions and withholdings in the February 2013 ICE Release and the March 2013 ICE Release.  *See* Tinio Decl. ¶ 2; Ex. 1.  As contemplated in the RSO, DHS produced *Vaughn* indices[4] cataloguing all of the redactions to which Plaintiff objected and all responsive records withheld in their entirety.  Law Decl. ¶¶ 7, 72; Exs. 1A-1C.

After providing the *Vaughn* indices, ICE continued to examine its own document releases and searches.  For example, ICE FOIA discovered that when searching for the records of the ten individuals who had left ICE, OCIO had inadvertently used a more restrictive date range than the

---

[4] These indices derive their name from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

one identified in Plaintiff's FOIA requests. Law Decl. ¶ 73. As a result, OCIO was re-tasked with searching ICE HSI for responsive documents from these individuals, using the broader date range. *Id.* Moreover, ICE FOIA undertook another review of OPR records contained in JICMS for records pertaining to category 12 of Plaintiff's FOIA requests. *Id.* at ¶ 74. On July 12, 2013, ICE advised Plaintiff that a supplemental search of OPR located eighteen additional pages of responsive records, and ICE made a discretionary release of those records (the "July 2013 ICE Release"). *Id.* at ¶ 75; Ex. 16. In this release, ICE FOIA determined that it should apply Exemptions 6 and 7(C) to protect from disclosure the personal identification information of ICE employees, law enforcement officers, and third-party individuals, and Exemption 7(E) to protect from disclosure law enforcement case numbers, law enforcement systems checks, and law enforcement sensitive information relating to heightened security measures. Law Decl. Ex. 16.

By letter dated July 2, 2013, Plaintiff provided DHS' counsel with 324 pages of e-mails that were produced by DHS in the MSPB litigation, but were not produced in any of DHS' FOIA productions. Ferdinand Decl. Ex. D. The e-mails included complaints initiated by Plaintiff, allegations against Plaintiff for "double-dipping and an investigation into same," a complaint made by Plaintiff for the search into his DHS office, communications between DHS and the Port Authority of New York and New Jersey regarding Plaintiff, and an ethics investigation concerning Plaintiff for alleged failure to cooperate with an OPR investigation. *Id.* On July 5, 2013, Plaintiff provided DHS with another e-mail that had not been produced as part of the FOIA request as evidence of additional gaps in DHS' FOIA production. *Id.* Ex. E. By letter dated July 9, 2013, Plaintiff provided DHS' counsel with an additional 59 pages of records of investigation believed to be missing from various DHS FOIA productions. *Id.* Ex. H.

By letter dated August 22, 2013, ICE FOIA advised Plaintiff that the records of

14

investigation believed missing were produced and advised where in the production they were located; in addition, ICE FOIA claimed it would make a supplemental production. *Id.* Ex. F. Plaintiff alleges that DHS never supplemented its production with regard to the 324 pages of missing e-mails.

By a second letter dated August 22, 2013, ICE FOIA produced 972 pages of documents (the "August 2013 ICE Release"), apparently unrelated to the 324 missing pages discussed above. Law Decl. ¶ 77; Ex. 15. This release consisted of additional communications responsive to categories 9 and 10 of Plaintiff's requests, located during OCIO's re-tasked search of the ten individuals, using a broader date range. Law Decl. ¶¶ 76, 77. The second August 22 letter indicated that the agency had applied Exemption 5 to protect attorney-client privileged portions of e-mail communications between an ICE attorney within ICE OPLA and his or her clients within ICE OPR and HSI, and Exemptions 6 and 7(C) to protect personal identification information of ICE employees, law enforcement officers, and third-party individuals, as well as statements made by third-party individuals. *Id.* Ex. 15. Additionally, although not noted in the second August 22 letter, portions of the records released were withheld pursuant to Exemptions 7(A) and 7(E). Law Decl. ¶ 77. The second August 22 letter further indicated that many of the documents released contained information that ICE FOIA determined was outside the scope of and not responsive to Plaintiff's FOIA requests, and that those portions of the documents had been marked "not responsive." *Id.* at ¶ 77; Ex. 15.

Finally, in September 2013, ICE FOIA determined that it could release additional information previously redacted pursuant to Exemptions 6 and 7(C) in a document Bates-stamped 2012FOIA03641.000532, and the re-processed document was released to Plaintiff. *Id.* at ¶ 78.

In total, DHS has released 3,049 pages of documents to Plaintiff. *See* Pl. Mem. 43.

## DISCUSSION

I.   FOIA Overview

FOIA's purpose is to provide the public with information regarding the workings of its government. *Triestman v. U.S. Dep't of Justice, Drug Enforcement Admin.*, 878 F. Supp. 667, 671 (S.D.N.Y. 1995). By providing access to government documents, FOIA ensures "an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (citations omitted). However, FOIA also represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). Thus, although FOIA generally requires the disclosure of government information, the statute recognizes "that public disclosure is not always in the public interest," *Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 166-67 (1985), and mandates that records not be disclosed if "the documents fall within [the] enumerated exemptions." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001).

II.   Summary Judgment Standard of Review for FOIA Actions

Challenges to a government agency's FOIA response are generally resolved on a motion for summary judgment. *See New York Times Co. v. U.S. Dep't of Justice*, 915 F. Supp. 2d 508, 531 (S.D.N.Y. 2013). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding the motion, the court views the record in the light most favorable to the non-moving party. *Hunter v. Bryant*, 502 U.S. 224, 233 (1991).

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citations omitted). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden." *Id.* (footnote and citations omitted). Affidavits submitted by an agency are accorded a presumption of good faith. *Id.*; *see also Wilner v. Nat'l Sec. Agency.*, 592 F.3d 60, 69 (2d Cir. 2009). Thus, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face. *Carney*, 19 F.3d at 812 (2d Cir. 1994).

When such is the case, the district court may "'forgo discovery and award summary judgment on the basis of affidavits.'" *Id.* (citations omitted). In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate. *Id.*

III.  Adequacy of Search

DHS must establish the adequacy of its searches by showing "that the agency made a good faith effort to search for the requested documents, using methods 'reasonably calculated' to produce documents responsive to the FOIA request." *Garcia v. U.S. Dep't of Justice Office of Info. & Privacy*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002) (citation omitted). "This standard does not demand perfection, and thus failure to return all responsive documents is not necessarily

17

inconsistent with reasonableness: an agency 'is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents.'" *Adamowicz v. I.R.S.*, 672 F. Supp. 2d 454, 462 (S.D.N.Y. 2009), *aff'd*, 402 F. App'x 648 (2d Cir. 2010) (citation omitted). Such reasonableness may be established solely on the basis of the government's relatively detailed, non-conclusory affidavits that are submitted in good faith. *See Carney*, 19 F.3d at 812. "An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search." *Id.* at 814 (citations omitted). Speculation that other documents exist, without more, "does not undermine the finding that the agency conducted a reasonable search." *Garcia*, 181 F. Supp. 2d at 366 (citations and internal quotation marks omitted).

Here, DHS has demonstrated that it conducted an adequate search for the documents requested by Plaintiff. DHS has submitted a declaration from Ryan Law, who is the Deputy FOIA Officer of ICE FOIA. Law Decl. ¶ 1. Law's declaration indicates that ICE FOIA searched the record systems, or caused the record systems to be searched, where it believed responsive records were likely to be located.

As to the numerous requests for investigative files (categories 1-8, 11-12), ICE FOIA determined that ICE OPR – as an office responsible for investigating allegations of employee misconduct – would likely have responsive records. *Id.* at ¶¶ 29, 30. Accordingly, ICE FOIA tasked ICE OPR with searching for such records. *Id.* Categories 11 and 12 also mentioned DHS OIG, Office of Investigations, and accordingly, ICE FOIA referred those categories to OIG FOIA to perform searches. *Id.* at ¶ 71. With respect to the requests for communications, ICE FOIA determined that the twenty-five custodians identified by Plaintiff were employed by ICE

18

HSI, and accordingly, ICE FOIA tasked HSI RDU with those searches. *Id.* at ¶¶ 33, 51. HSI RDU evaluated each custodian and sent search instructions to the various field offices where it believed the custodians worked. *Id.* at ¶ 36. Finally, with respect to category 13, HSI RDU searched TECS, the investigative case management database used by that office, which includes a wide range of law enforcement information from a variety of sources. *Id.* at ¶ 57.

The Law declaration shows that each of these searches was conducted reasonably and in good faith. With regard to the investigative records, OPR searched the JICMS, a database used by that office that contains investigations undertaken by or referred to ICE OPR, and located responsive documents. *Id.* at ¶¶ 30, 74. With regard to the communications, HSI RDU instructed custodians in various field offices to search for responsive documents, and as a result collected documents from twelve custodians. *Id.* at ¶¶ 36-38, 52. As to two employees who had transferred to OPR from HSI, ICE FOIA instructed OPR to ask them to search for records, then requested the assistance of the OCIO in pulling those individuals' electronic files – which constituted all items ever sent or received by those individuals by e-mail during the designated time period of the search. *Id.* at ¶¶ 53, 55, 56. The OCIO employed a variety of methods to locate these files, even searching backup tapes, and expended nearly one hundred hours on these two custodians alone. *Id.* at ¶ 67. OPLA searched these documents for responsiveness on an electronic review platform, then provided documents to ICE FOIA for review and processing. *Id.* at ¶ 68. As to one custodian who had previously provided his records to OPR, OPR located those records and OPLA searched them on an electronic review platform, but located no responsive documents. *Id.* at ¶¶ 54, 63. Finally, as to the ten custodians who had left ICE, the OCIO attempted to locate their documents, but could not find five of the custodians. *Id.* at ¶ 61. As to the other five, the OCIO spent about sixty-five hours locating and pulling their electronic

files, including consulting the oldest available backups. *Id.* at ¶ 62. OCIO was able to retrieve

36,330 documents, which were loaded onto an electronic review platform and searched for

responsiveness by OPLA, with responsive documents then reviewed and processed by ICE

FOIA. *Id.* at ¶ 65.

The declaration provided by Stephanie L. Kuehn, who is a Senior Freedom of

Information Act/Privacy Act Disclosure Analyst at OIG FOIA, Kuehn Decl. ¶ 1, shows that OIG

FOIA's searches, upon receiving the referral of categories 11 and 12 from ICE FOIA, were also

reasonable. Like ICE FOIA, OIG FOIA ensured that the records systems where responsive

records were likely to be located were searched. OIG reviewed the requests and determined that

they sought records under the control of INV, the OIG Office of Investigations. *Id.* at ¶ 4.

Indeed, categories 11 and 12 of Plaintiff's FOIA requests specifically reference INV. Law Decl.

Ex. 3. INV searched for records within the EDS, a case management system used by INV that

tracks all allegations received and investigations initiated. Kuehn Decl. at ¶ 5. At INV's

suggestion, OIG FOIA also contacted the Office of Special Investigations in an effort to locate

responsive documents, but determined that that office did not maintain any responsive records.

*Id.* at ¶ 6. As a result of these searches, OIG released responsive documents to Plaintiff. *Id.* at ¶¶

7-9. In sum, these extensive search and review efforts by all of the divisions within DHS meet

the adequacy standard.

Plaintiff's arguments in support of his claim that DHS failed to perform an adequate

search can be summarized as follows:

(1) DHS' searches are not complete or, alternatively, there are outstanding searches to be
performed.

(2) Certain investigative documents regarding the Inspector General complaint are
missing.

(3) The people performing some of the searches are the very people who Plaintiff "blew the whistle on" at DHS, and they performed the searches at their own discretion.

(4) The searches are not described in sufficient detail; DHS failed to employ uniform procedures to its searches; the searches were performed ad hoc and at the discretion of DHS' employees.

(5) DHS maintains an ad hoc and impromptu records management system that causes spoliation of evidence and does not meet the standards that a private litigant would have to meet in federal court.

(6) Paper records were not searched.

(7) Inadequate search terms were used and DHS failed to search variations of Plaintiff's name, as well as the names of third-party Steven Kucan and FAPS, Inc.

(8) DHS failed to perform searches over the new server based disaster recovery system, which retains the complete e-mail archive for every ICE employee.

(9) Plaintiff's requests were "jockeyed" around the agency.

The majority of Plaintiff's arguments are at odds with the well-established principle that when processing requests, an agency's search should be "'reasonably calculated to discover the requested documents'" and "need not be perfect, but rather need only be reasonable." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (citation omitted). However, the Court will address each of Plaintiff's claims.

Regarding the first category, incomplete searches render an agency's search unreasonable if they are "patently incomplete." *See Families for Freedom v. U.S. Customs and Border Prot.*, 837 F. Supp. 2d 331, 336 (S.D.N.Y. 2011); *see also Adamowicz v. I.R.S.*, 402 F. App'x 648, 651 (2d Cir. 2010). Here, DHS' production is not patently incomplete. Although it is true that at the time DHS filed its opening brief, the OCIO had not completed its search of some back-up tapes in order to find the e-mail communications of certain custodians for the time period 2006-November 2008, Law Decl. ¶ 76, in the intervening time, OCIO completed its search of these

21

tapes and located no responsive data. Pavlic-Kennan Decl. ¶¶ 5, 6. Plaintiff also complains that

documents that were produced during the MSPB litigation were not produced in the FOIA

production. However, the fact that responsive documents were produced in the MSPB litigation,

but were never produced in the FOIA production, does not make DHS' search patently

incomplete: "an agency need not show that its search uncovered every extant responsive

document." *Adamowicz*, 402 F. App'x at 651. In *Abamowicz*, the IRS produced documents in a

tax court litigation that were not produced in the agency's FOIA production. Although the

responsive documents from the tax court litigation were later produced as a part of the FOIA

search, the Second Circuit noted the futility of the plaintiffs' complaint: "plaintiffs would have

already possessed these documents." *Id.* at 651 n.2. Here, the e-mails that were produced by

DHS in the MSPB litigation, but which were not produced in any of the FOIA productions,

Ferdinand Decl. Ex. D, are already in Plaintiff's possession. Requiring DHS to search for

documents Plaintiff already possesses would be a meaningless exercise. In sum, Plaintiff's proof

of missing documents fails to render DHS' search unreasonable. Because the Court is satisfied

with the method of search, it need not dwell on the sheer results. *See Cleary, Gottlieb, Steen &*

*Hamilton v. Dep't of Health & Human Servs.*, 844 F. Supp. 770, 777 n.4 (D.D.C. 1993).

     Likewise, regarding the second category, Plaintiff's speculative claim that there are other

missing documents is insufficient to impugn the adequacy of DHS' search. *See, e.g.*, *SafeCard*

*Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Mere speculation that as yet

uncovered documents may exist does not undermine" the sufficiency of an agency's search);

*Miller v. U.S. Dep't of State*, 779 F.3d 1378, 1385 (8th Cir. 1985) ("[T]he [agency] is not

required by the Act to account for documents which the requester has in some way identified [by

references in released documents] if it has made a diligent search for those documents in places

in which they might be expected to be found"). *See also Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 404 F. Supp. 2d 325, 349 (D.D.C. 2005), *aff'd*, 512 F.3d 677 (D.C. Cir. 2008) (rejecting challenge to adequacy of search based on references in released documents to other documents that were not produced).

Regarding the third category, Plaintiff forgets that the searches are presumed to have been performed in good faith. *Boehm v. F.B.I.*, 948 F. Supp. 9, 24 (D.D.C. 2013). Plaintiff essentially asks the Court to presume bad faith on behalf of the employees performing the searches – the opposite of what the law instructs. *See id.* Speculation regarding the motivations of the people performing the searches is not evidence of bad faith.

Regarding the fourth category, an agency is not required to describe the exact methodologies used by its employees in executing a FOIA search. *Nat'l Immigration Project of the Nat. Lawyers Guild v. U.S. Dep't of Homeland Sec.*, No. 11 Civ. 3235, 2012 WL 6809301, at *4 (S.D.N.Y. Dec. 27, 2012) (citation and internal quotation marks omitted) (an agency "need not describe with meticulous documentation the details of an epic search for the requested records"). In *Nat'l Immigration Project*, the court found that "[r]equiring a description of how the attorneys searched their files so that plaintiffs can scrutinize all aspects of the [agency's] efforts would run afoul of the principle that courts confronted with FOIA requests should not attempt to micro manage the executive branch." *Id.* at *7 (citation and internal quotation marks omitted).

Regarding the fifth category, DHS has no obligation to preserve its records according to the rules of civil discovery. *See Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 66-67 (D.D.C. 2003) (citations and internal quotation marks omitted) ("FOIA does not impose a document retention requirement on agencies. Even where an agency was obligated to retain a

document and failed to do so, that failure would create neither responsibility under FOIA to reconstruct those documents nor liability for the lapse.").

Regarding the sixth category, Law's declaration establishes that paper files are routinely searched in response to FOIA requests and were searched in this instance. Law Decl. ¶¶ 8, 37.

Regarding the seventh category, an agency is not required to search for all possible variants of a particular name or term. *See Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 119 (D.D.C. 2011) (agency's search was adequate even when it failed to search "under logical variants" of the names plaintiff provided).

Regarding the eighth category, DHS did not perform a search over the server based disaster recovery system because of the number of e-mails on that system and the undue burden such a search would require. Law Decl. ¶ 14 (The search would be "extremely time consuming and [would] require the services of the agency's Office of the Chief Information Officer (OCIO). Given the significant time and resources limitations of OCIO, ICE does not leverage the disaster recovery server for conducting routine FOIA searches."). Because "an agency need not conduct a search that plainly is unduly burdensome," DHS' failure to search over the server based disaster recovery system does not render its search unreasonable. *See Halpern v. F.B.I.*, 181 F.3d 279, 288 (2d Cir. 1999).

Regarding the ninth category, an agency need only search those systems in which it believes responsive records are likely to be located. *See Amnesty Int'l USA v. Cent. Intelligence Agency*, 728 F. Supp. 2d 479, 497 (S.D.N.Y. 2010); *see also Maynard v. C.I.A.*, 986 F.2d 547, 563 (1st Cir. 1993) (citation omitted) ("'There is no requirement that an agency search every record system.'"). And, ICE FOIA only referred categories 11 and 12 to OIG FOIA because those were the only requests that referenced documents that might be in the possession of OIG.

24

*See* Law Decl. ¶¶ 22, 23, 71, Exs. 2, 3; Kuehn Decl. ¶ 4.

Lastly, the Court declines to find DHS' search inadequate simply because DHS conducted supplemental searches which resulted in the release of previously unreleased documents. Indeed, these supplemental searches further demonstrate ICE FOIA's good faith in responding to Plaintiff's FOIA requests. Courts have found that an agency's additional releases of documents accomplished as a result of working with the requester suggest a "stronger, rather than a weaker, basis" for accepting the integrity of the search. *See Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (citation and internal quotation marks omitted). As the *Meeropol* court counseled, "[i]t would be unreasonable to expect even the most exhaustive search to uncover *every* responsive file; what is expected of a law-abiding agency is that it admit and correct error when error is revealed." *Id.* (emphasis in original). In a similar vein, many courts have rejected the argument that the discovery of additional documents or later discovery of missing files renders a search unreasonable or conducted in bad faith. *See, e.g., Grand Cent. P'ship*, 166 F.3d at 489 (plaintiff cannot establish the agency's bad faith merely by showing documents were subsequently discovered that were not found in the agency's initial search for responsive documents); *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 370 (D.C. Cir. 1978) (discovery of additional documents not inconsistent with district court's finding that search was thorough). And, the 324 e-mails produced in the MSPB litigation that DHS failed to produce in its FOIA production is not evidence of bad faith. *Kay v. F.C.C.*, 976 F. Supp. 23, 33 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) ("assertions of bad faith must fail where the plaintiff has acquired documents through other means, such as formal discovery, because these procedures may differ from FOIA disclosure procedures").

Accordingly, summary judgment is GRANTED on the reasonableness of DHS' search,

25

and DHS is not required to search for any additional documents. *See Garcia*, 181 F. Supp. 2d at 366 (citation omitted) ("If an agency demonstrates that it has conducted a reasonable search for relevant documents, it has fulfilled its obligations under FOIA and is entitled to summary judgment on this issue.").

IV. <u>Documents Withheld Under the Exemptions</u>

FOIA provides nine exemptions from its disclosure requirement and agency information falling within the terms of these exemptions need not be disclosed. *See* 5 U.S.C. § 552(b). Federal courts must conduct a *de novo* review of an agency's decision to withhold records requested by a member of the public under FOIA. *Halpern*, 181 F.3d at 287. In a FOIA case, to prevail on its motion for summary judgment, the agency "has the burden of showing that . . . any withheld documents fall within an exemption to the FOIA." *Carney*, 19 F.3d at 812. Summary judgment is proper in a FOIA case where affidavits give "reasonably detailed explanations why any withheld documents fall within an exemption," *id.*, and show that the withheld information "logically falls within the claimed exemption." *Halpern*, 181 F.3d at 291 (citation omitted). A governmental agency's affidavits are "accorded a presumption of good faith." *Carney*, 19 F.3d at 812 (citation and internal quotation marks omitted). As a result, if the agency's submissions are adequate on their face, discovery relating to the exemptions claimed is unnecessary. To justify any discovery once the agency has satisfied its burden, the plaintiff must either show bad faith on the part of the agency by disputing the agency's affidavits, or show through "some tangible evidence" that the claimed exemption should not apply. *Carney*, 19 F.3d at 812.

In this case, DHS invokes several exemptions: the attorney-client privilege exemption, 5 U.S.C. § 552(b)(5) ("Exemption 5"), the personal privacy exemption, 5 U.S.C. § 552 (b)(6) ("Exemption 6"), the law enforcement exemption for material which if disclosed could interfere

with enforcement proceedings, 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)"), the law

enforcement exemption for personal privacy, 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"), and

the law enforcement exemption for techniques and procedures, 5 U.S.C. § 552(b)(7)(E)

("Exemption 7(E)").  DHS also provided *Glomar* responses to several of Plaintiff's FOIA

requests.

   A.  Exemption 5

   Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or

letters which would not be available by law to a party . . . in litigation with the agency."  5

U.S.C. § 552(b)(5).  "By this language, Congress intended to incorporate into the FOIA all the

normal civil discovery privileges."  *Hopkins v. U.S. Dep't of Hous. and Urban Dev.*, 929 F.2d

81, 84 (2d Cir. 1991).  "'Stated simply, agency documents which would not be obtainable by a

private litigant in an action against the agency under normal discovery rules . . . are protected

from disclosure under Exemption 5.'"  *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir.

2002) (footnote and citation omitted).  Among other privileges, Exemption 5 incorporates the

attorney-client privilege.  *In re Grand Jury Investigation*, 399 F.3d 527, 533 (2d Cir. 2005).

   In this case, ICE FOIA applied Exemption 5 to withhold portions of e-mail discussions in

the March 2013 ICE Release and the August 2013 ICE Release.  Law Decl. ¶ 81.  Each

withholding is catalogued in ICE's corresponding *Vaughn* indices.  *See* Law Decl. Ex. 1D (Entry

No. 16), Ex. 1F (Entry No. 4).  Each withheld e-mail communication is between agency

employees, on one hand, and an agency attorney from DHS Office of the Principal Legal

Advisor ("OPLA"), on the other.  Law Decl. ¶ 81.  The subject of all of the withheld e-mails was

the MSPB litigation; all of the communications were made for the purpose of securing or

providing legal advice or services; and all of the communications were intended to be, and were

kept, confidential. *Id.* The attorney-client privilege thus protects all of these communications

from release, and ICE FOIA's assertion of Exemption 5 over the communications was proper.

And, Plaintiff "does not take issue with these limited documents redacted to date concerning a

claim of attorney-client privilege." Pl. Mem. 62.

Accordingly, summary judgment is GRANTED on DHS' Exemption 5 redactions.

B.  Exemptions 6 and 7(C)

The Court will analyze Exemptions 6 and 7(C) together because both exemptions balance

individuals' privacy interests in protecting information from disclosure against the public interest

in disclosure.

Exemption 6 exempts from disclosure information from personnel, medical, or other

similar files, the disclosure of which "would constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(6). The purpose of Exemption 6 is to "protect individuals

from the injury and embarrassment that can result from the unnecessary disclosure of personal

information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). The

statutory language concerning files "similar" to personnel or medical files has been read broadly

by the Supreme Court to encompass any "information which applies to a particular individual . . .

sought from government records." *Id.* at 602. The privacy interest in Exemption 6 "belongs to

the individual, not the agency." *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 93 (D.D.C.

2009).

Exemption 7(C) exempts records or information compiled for law enforcement purposes,

but only to the extent that the production "could reasonably be expected to constitute an

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The exemption "is more

protective of privacy than Exemption 6, because [Exemption 7(C)] applies to any disclosure that

28

could reasonably be expected to constitute an invasion of privacy that is unwarranted." *Associated Press v. Dep't of Justice*, No. 06 Civ. 1758, 2007 WL 737476 at *4 (S.D.N.Y. Mar. 7, 2007), *aff'd*, 549 F.3d 62 (2d Cir. 2008) (citations and internal quotation marks omitted).

In determining whether personal information is exempt from disclosure under Exemptions 6 and 7(C), the Court must balance the public's need for this information against the individual's privacy interest. *See Wood v. F.B.I.*, 432 F.3d 78, 86 (2d Cir. 2005). "The privacy side of the balancing test is broad and encompasses all interests involving the individual's control of information concerning his or her person." *Id.* at 88 (citation and internal quotation marks omitted). Moreover, "[t]he privacy interests protected by the exemptions to FOIA are broadly construed." *Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 65 (2d Cir. 2008). Accordingly, even a small privacy interest triggers a balancing analysis. *See Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274, 285 (2d Cir. 2009) (citation omitted) ("Thus, 'once a more than *de minimis* privacy interest is implicated the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA.'"). On the other hand, the "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA', which is 'contribut[ing] significantly to public understanding *of the operations or activities of the government*.'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (alteration and emphasis in original) (citation omitted). "The requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA." *Associated Press*, 549 F.3d at 66.

In this case, the agency withheld the following types of information pursuant to Exemptions 6 and 7(C): third parties' personal identification information, including names,

initials, dates of birth, signatures, physical and residential addresses, e-mail addresses, telephone

numbers, social security numbers, criminal history, immigration history, investigative history,

service weapon assignments, handgun qualification scores, employment dates, law enforcement

case and file numbers associated with particular individuals, job titles, job descriptions and

locations, employer information, case report numbers and subject descriptions containing

personal identification information, document names containing  personal identification

information, and identifying statements made by individuals in furtherance of internal agency

investigations and law enforcement investigations, where those statements could be used to

identify the third parties.  *See* Law Decl. ¶¶ 83, 95; Kuehn Decl. ¶¶ 13, 25, 26.  Each withholding

is catalogued in the agency's *Vaughn* indices.  *See* Law Decl. Ex. 1A (Entry Nos. 2, 3, 5), Ex. 1D

(Entry Nos. 5-10, 13-15, 17, 21, 22, 24-27, 29, 30); Ex. 1E (Entry Nos. 1, 5); Ex. 1F (Entry Nos.

1, 3); Kuehn Decl. Ex. 3 (all entries).

     In their declarations, Law and Kuehn explain that they determined that these

withholdings are warranted to protect the privacy of third-party individuals (none of whom have

consented to the disclosure of this information) against unnecessary questioning and harassment,

embarrassment, humiliation, possible interference with duties, and reprisals against government

and law enforcement personnel.  Law Decl. ¶¶ 83-87, 95-97; Kuehn Decl. ¶¶ 15, 25.  The

withheld information includes not only personal identification information of third parties (such

as names and e-mail information), but also information that could be used to deduce the

identities of the third parties (such as statements given in the furtherance of investigations),

which might, for example, dissuade agency employees from participating in internal

investigations.  Law Decl. ¶¶ 84, 95, 97.  *See Perlman v. U.S. Dep't of Justice*, 312 F.3d 100,

106 (2d Cir. 2002), *vacated by* 541 U.S. 970 (2004), *reinstated after remand*, 380 F.3d 110 (2d

Cir. 2004) (concluding that the privacy interests of witnesses and third parties to a Report of Investigation were strong, and that "[t]he strong public interest in encouraging witnesses to participate in future government investigations offsets the weak public interest in learning witness and third party identities.  We find that the district court correctly concluded that the names of witnesses and third parties, along with their identifying characteristics, were properly redacted.").

Federal courts recognize that individuals have a significant privacy interest in their personal identification information.  *See, e.g., Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006) (Exemption 6 applies to files about an individual and "bits of personal information, such as names and addresses"); *Associated Press*, 554 F.3d at 285 (citations omitted) ("It is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA"). Individuals, whether targets, investigators, witnesses, or third parties, also have a privacy interest in not being associated with a law enforcement investigation, and in protecting the details of their statements given in the course of such investigations.  *See, e.g., Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (citation omitted) (finding that "Exemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity'"); *Pototsky v. Dep't of the Navy*, 695 F. Supp. 1084, 1087 (D. Haw. 1988) (applying Exemption 6 to deny FOIA request for witness statements made during an investigation, in part because of "possibl[e] further intrusion upon the privacy of the witnesses who provided statements in the investigation"); *Jarvis v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, No. 07 Civ. 111, 2008 WL 2620741, at *2 (N.D. Fla. June 30, 2008) (witnesses interviewed and ATF agents

and employees involved in an investigation "have significant privacy interests in their names and the details of their statements").

On the other side of the balancing analysis, the revelation of personal identification information about third parties tells citizens nothing about "*what their government is up to,*" *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press,* 489 U.S. 749, 773 (1989) (emphasis in original), and therefore there is little to no public interest in its disclosure.  The release of most of the third-party information withheld by the agency in this case would not contribute "significantly to public understanding *of the operations or activities of the government,*" which is the "only relevant public interest in disclosure to be weighed in this balance." *Fed. Labor Relations Auth.,* 510 U.S. at 495-96 (emphasis in original) (citation and internal quotation marks omitted).

Plaintiff argues that the public interest here is strong because the information Plaintiff seeks in this case goes to the heart of opening up government action to the light of public scrutiny.  Plaintiff states "it is the public, through taxes, that paid for the equipment that Kucan admitted to selling over the internet; it is the public that was affected by purported breaches of safety in investigations; it is the public that was affected by the theft that DHS allowed to occur during the investigation about which Conti complained; and it is the public that has an interest in how the government acted in this backdrop in the performance of its statutory duties."  Pl. Mem. 54.

"[I]f a FOIA requester asserts a public interest in uncovering Government deficiencies or misfeasance, the requester must produce evidence to support that public interest." *Jurewicz v. U.S. Dep't of Agric.,* 891 F. Supp. 2d 147, 157 (D.D.C. 2012), *aff'd,* 741 F.3d 1326 (D.C. Cir. 2014).  Furthermore, "when . . . governmental misconduct is alleged as the justification for

disclosure, the public interest is 'insubstantial' unless the requester . . . shows that the information sought 'is necessary in order to confirm or refute'" the misconduct. *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (citation omitted). "Allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (2004) (citations and internal quotation marks omitted). Plaintiffs must produce evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred. *Id.* at 174. In the absence of clear evidence to the contrary, courts presume that government agents have properly discharged their official duties. *Id.*

Regarding Kucan's theft of government property, the public interest is insubstantial because the information sought regarding Kucan is not "'necessary in order to confirm or refute'" the theft. *Davis*, 968 F.2d at 1282 (citation omitted). Kucan has pleaded guilty and been sentenced in federal court; thus, the public interest in confirming or denying Kucan's misconduct is negligible. Ferdinand letter, Jan. 28, 2014, ECF No. 50. Plaintiff has failed to provide a meaningful evidentiary showing of his other vague allegations of government misconduct. By Plaintiff's own admission, the breaches of safety in investigations about which Plaintiff complains are "purported." Pl. Mem. 54. Indeed, the portion of Plaintiff's memorandum discussing the public interest contains no evidentiary support. The Court's independent review of Plaintiff's conclusory and self-serving affidavit does not lead it to a different conclusion.

Plaintiff's private interest – the use of documents in the MSPB litigation – is immaterial. *See, e.g.*, *Ferrigno v. U.S. Dep't of Homeland Sec.*, No. 09 Civ. 5878, 2011 WL 1345168, at *8 (S.D.N.Y. Mar. 29, 2011) (in the context of an Exemption 6 analysis, opining that "[t]o the extent [p]laintiff is asserting that his interest in vindicating his claims justifies disclosure, this

33

private reason for obtaining the information is clearly insufficient"); *Pototsky*, 695 F. Supp. at 1087 (the fact that plaintiff's sole purpose for obtaining witness statements "is to further his private interest in clearing his record" weighs against him in the Exemption 6 analysis). Thus, the balancing analysis favors protecting personal identification information from disclosure.

Plaintiff challenges the privacy interests asserted by DHS, arguing that (1) he is seeking information about government employees, and not third parties; (2) the law enforcement investigations are closed; and (3) the exempted information is already in the public domain.

Plaintiff's first argument is unavailing. Although government employees' privacy interests are "somewhat diminished," public employees do "not surrender all rights to personal privacy." *Perlman*, 312 F.3d at 107 (citation and internal quotation marks omitted). *See also Amnesty Int'l USA*, 728 F. Supp. 2d at 525 (holding that "the privacy concerns of releasing the personal information of agency employees are not overridden by any public interest in releasing the information"); *Jarvis*, 2008 WL 2620741, at *2 (witnesses interviewed and ATF agents and employees involved in an investigation "have significant privacy interests in their names and the details of their statements," and the asserted privacy interest "falls within the statutory exemption"). Plaintiff's second argument is similarly meritless. Indeed, Plaintiff points to no authority which supports the proposition that private information relating to a law enforcement investigation is no longer private simply because the investigation has been closed. Indeed, FOIA appears to protect private investigations whether they are ongoing or closed. *See Jewett v. U.S. Dep't of State*, No. 11 Civ 1852, 2013 WL 550077, at *8 (D.D.C. Feb. 14, 2013); *Lasko v. U.S. Dep't of Justice*, 684 F. Supp. 2d 120, 133 (D.D.C. 2010), *aff'd*, No. 10 Civ. 5068, 2010 WL 3521595 (D.C. Cir. Sept. 3, 2010).

Lastly, in contesting DHS' use of Exemptions 6 and 7(C), Plaintiff asserts that DHS'

redaction of the names and positions within DHS of individuals who appear on a multitude of documents is no longer protected because their names and their involvement in the investigations surrounding Plaintiff entered the public domain when un-redacted documents were produced and individuals were deposed during the MSPB litigation.  Plaintiff claims that seven of the twenty-five individuals DHS searched processing categories 9 and 10 were deposed, but only points the Court to two deposition transcripts.  Ferdinand Decl. Exs. K, L.  Plaintiff also only points the Court to three documents, various Reports of Investigation.  Ferdinand Decl. Ex. I Parts 1-3.[5]

Although the government may not rely on a FOIA exemption to withhold information that has been officially acknowledged or is in the public domain, *Afshar v. U.S. Dep't of Justice*, 702 F.2d 1125, 1130 (D.C. Cir. 1983), Plaintiff has the initial burden of showing prior disclosure by "point[ing] to 'specific' [publicly disclosed] information identical to that being withheld." *Davis*, 968 F.2d at 1280.  This exemption applies only when the requested information "(1) [is] as specific as the information previously released, (2) match[es] the information previously disclosed, and (3) was made public through an official and documented disclosure."  *Wilson v. Cent. Intelligence Agency*, 586 F.3d 171, 186 (2d Cir. 2009) (alterations in original) (citations and internal quotation marks omitted).  A disclosure is official "when the agency responsible for protecting the information discloses it."  *Wilson v. McConnell*, 501 F. Supp. 2d 545, 559 (S.D.N.Y. 2007).

Plaintiff has not met his burden of production regarding any of the depositions.  First, Plaintiff cites only one specific section of deposition testimony from one deposition – Ferdinand Dec. Ex. K (18:21-20:3).  *See* Pl. Mem. 40; *Davis*, 968 F.2d 1280 (Plaintiff must "point to 'specific' information").  *See also Niles v. New York Office of Mental Retardation & Dev.*

---

[5] Ferdinand Decl. Ex. I Parts 1-3 contain the Reports of Investigation in both redacted form (from the FOIA production) and un-redacted form (from the MSPB litigation).

*Disability*, No. 89 Civ 598, 1996 WL 743839, at *6 n.10 (N.D.N.Y. Dec. 20, 1996) (Courts are

not obligated to wade through pages of deposition testimony, but must rely on the parties to point

to specific pages in the record.).  With respect to the specific information Plaintiff does cite from

the one deposition, Plaintiff has failed to produce any evidence that the information contained in

Ferdinand Dec. Ex. K (18:21-20:3) is identical to information being withheld.  However,

Plaintiff has met his burden of production with respect to the three Reports of Investigation,

Ferdinand Decl. Ex. I Parts 1-3, as they all match information previously disclosed.

 Accordingly, summary judgment is DENIED on DHS' Exemptions 6 and 7(A)

redactions.  *See Azmy v. U.S. Dep't of Defense*, 562 F. Supp. 2d 590, 606 (S.D.N.Y. 2008)

(denying summary judgment in part where information withheld was identically disclosed

elsewhere by the government).  It is ORDERED that DHS reexamine the redactions it made

pursuant to Exemptions 6 and 7(A) and un-redact any identical information withheld in

Ferdinand Decl. Ex. I Parts 1-3.  The un-redacted documents must be disclosed to Plaintiff by

May 16, 2014.

 C.  Exemption 7(E)

 Exemption 7(E) exempts from disclosure "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records

or information . . . would disclose techniques and procedures for law enforcement investigations

or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions

if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. §

552(b)(7)(E).  ICE FOIA has asserted Exemption 7(E) to protect certain confidential ICE

investigative techniques and procedures for law enforcement investigations or prosecutions.

Law Decl. ¶¶ 99-102.  Each application of Exemption 7(E) is also catalogued in ICE FOIA's

*Vaughn* indices.  Law Decl. Ex. 1A (Entry No. 1), Ex. 1D (Entry Nos. 1-4), Ex. 1E (Entry Nos. 2-4, 6, 7), Ex. 1F (Entry Nos. 5, 6).  The techniques and procedures include, for example, the use of law enforcement resources, including system record identification numbers, incident numbers, database access codes, case numbers, program codes, secured URL's, operation names, and other law enforcement agency database case numbers, or identifiers, as well as internal ICE techniques such as surveillance techniques and undercover investigation methodologies used by ICE during the investigation of violations of immigration and customs law.  Law Decl. ¶ 100.

Summary judgment is DENIED as to DHS' Exemption 7(E) redactions, as some of the Exemption 7(E) redactions withhold information already in the public domain.[6]  It is ORDERED that DHS re-examine the  Exemption 7(E) redactions and un-redact any identical information revealed in Ferdinand Decl. Ex. I Parts 1-3.  The un-redacted documents must be produced to Plaintiff by May 16, 2014.

D.  Exemption 7(A)

Exemption 7(A) protects from disclosure records or information compiled for law enforcement purposes "to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  Exemption 7 was designed to prevent harm to the government's case in court by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have.  *Robbins Tire & Rubber Co.*, 437 U.S. at 224-25.  An investigatory record "must meet two criteria to fall within Exemption 7(A):  first, it must be compiled for law enforcement purposes, and second, its release must interfere with enforcement proceedings."  *Edmonds v. F.B.I.*, 272 F. Supp. 2d 35, 54 (D.D.C. 2003) (internal quotation marks omitted).

---

[6] Some of the redactions on the Reports of Investigation, Ferdinand Decl. Ex. I Parts 1-3, were made pursuant to Exemption 7(E).

In this case, in response to categories 3, 8, and 11 of Plaintiff's FOIA requests, which seek investigative files and records relating to a third-party individual (Steven Kucan), ICE FOIA and OIG FOIA both withheld documents pursuant to Exemption 7(A) (the "Kucan Documents"). Law Decl. ¶¶ 90-92; Kuehn Decl. ¶¶ 7, 8, 21, 22. At the time DHS' motion for summary judgment was filed, DHS argued that the Kucan Documents met the second requirement of Exemption 7(A) – that the release of information "could reasonably be expected to interfere with enforcement proceedings," *see* 5 U.S.C. § 552(b)(7)(A), because there was an ongoing law enforcement proceeding against Steven Kucan in the United States District Court for the District of New Jersey. DHS argued that because Kucan had not yet been sentenced, the criminal proceeding was not final, and, therefore, the law enforcement proceeding had not concluded. However, on January 24, 2014, Judge Esther Salas sentenced Kucan, making his conviction final.[7]  Ferdinand letter, Jan. 28, 2014, ECF No. 50.

Thus, summary judgment is DENIED on the Exemption 7(A) redactions. DHS stated that "[b]oth ICE FOIA and OIG FOIA have advised Plaintiff that if, at some point, the law enforcement proceeding is no longer pending and Plaintiff renews his request to the agency for release of the Kucan Documents, other FOIA Exemptions may apply to protect certain records or portions of records from disclosure, for example Exemptions 6, 7(C), 7(D), 7(E), and/or 7(F)." DHS Mem. 26. It is ORDERED that DHS produce to Plaintiff un-redacted versions of the Kucan Documents by May 16, 2014. DHS may apply other exemptions to the Kucan Documents, where warranted. However, DHS may not redact any identical information revealed in Ferdinand Decl. Ex. I Parts 1-3.

---

[7] Kucan's plea agreement expressly waives any right to "file an appeal, collateral attack, writ, or motion after sentencing." Ferdinand Decl. Ex. B.

E.  *Glomar* Responses

DHS seeks an order upholding the *Glomar* responses made by ICE FOIA and OIG FOIA

in response to Plaintiff's requests for investigative files and records relating to third parties.  *See*

Law Decl. ¶¶ 31, 103; Kuehn Decl. ¶ 8.  Specifically, DHS asserts a *Glomar* response for

categories 1 (concerning Peter Qualia's investigatory files and records), 2 (concerning Karen

Pace's investigatory files and records), and 4-6 (concerning the investigatory files and records of

James Enderle, Mona Forman, and Peter Smith, respectively); DHS has also asserted a *Glomar*

response for any investigative files or records concerning Kucan, apart from those associated

with his criminal action.

A *Glomar* response is appropriate when "to confirm or deny the existence of records . . .

would cause harm cognizable under an [sic] FOIA exception."  *Gardels v. Cent. Intelligence*

*Agency*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).  Indeed, "[t]he *Glomar* doctrine is well settled as

a proper response to a FOIA request because it is the only way in which an agency may assert

that a particular FOIA statutory exemption covers the 'existence or nonexistence of the requested

records' in a case in which a plaintiff seeks such records."  *Wilner*, 592 F.3d at 68 (citations

omitted).  "[W]hen the Agency's position is that it can neither confirm nor deny the existence of

the requested records, there are no relevant documents for the court to examine other than the

affidavits which explain the Agency's refusal."  *Wolf v. Cent. Intelligence Agency*, 473 F.3d 370,

374 n.4 (D.C. Cir. 2007) (citation and internal quotation marks omitted).  As with FOIA

responses more generally, "[i]n evaluating an agency's *Glomar* response, a court must accord

'substantial weight' to the agency's affidavits, 'provided [that] the justifications for

nondisclosure are not controverted by contrary evidence in the record or by evidence of . . . bad

faith.'"  *Wilner*, 592 F.3d at 68 (alteration in original) (citation omitted).  In this case, ICE FOIA

has maintained a *Glomar* response as to categories 1, 2, and 4-6 of Plaintiff's requests, which

seek release of investigative files and records of third parties other than Steven Kucan. Law

Decl. ¶¶ 31, 103. In addition, OIG FOIA has provided a *Glomar* response as to any investigative

files or records that may or may not exist regarding Steven Kucan, apart from those associated

with the District of New Jersey action. Kuehn Decl. ¶ 8. These responses are proper because

Exemptions 6 and 7(C) protect these records' existence or nonexistence from disclosure. Law

Decl. ¶ 103; Kuehn Decl. ¶¶ 8, 16, 27. Individuals have a strong privacy interest in protecting

from disclosure the fact of the existence or nonexistence of investigative records associated with

them. *See, e.g., Triestman*, 878 F. Supp. at 669 ("Government employees have a privacy interest

in not having their names disclosed in connection with investigations in which they are or were

under scrutiny."). There is also little to no public interest in the disclosure of the existence or

nonexistence of third parties' investigative files. *See id.* at 670 (determining that "[n]o public

interest outweighs the privacy interests" of the government agents in that case, and that the only

interest significantly served by disclosure "is the personal interest of the plaintiff").

Plaintiff challenges the *Glomar* responses, first because they deprive the Court of the

ability to perform a segregability analysis. However, where a *Glomar* response is properly

asserted, an agency is not obligated to expend the resources to conduct a search and segregability

analysis as to any responsive documents. *See Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 678

F.3d 926, 934 (D.C. Cir. 2012) (because the agency's declaration sufficiently supported a

*Glomar* response, "requiring [the agency] to conduct a search and segregability analysis would

be a meaningless – not to mention costly – exercise"); *see also Wheeler v. Cent. Intelligence*

*Agency*, 271 F. Supp. 2d 132, 141 (D.D.C. 2003) (affirming a *Glomar* response where the agency

did not identify "whether or to what extent it had conducted a search").

Plaintiff also argues that three of the individuals (Quaglia, Smith, and Enderle) were deposed in the MSPB litigation. Yet, Plaintiff has failed to provide the deposition transcript, or cite any testimony or evidence in the record that confirms that their testimony was publicly disclosed, or that any information identical to their testimony was withheld. Thus, Plaintiff has failed to meet his burden of production, and it cannot be said that specific records sought by the FOIA request have been publicly acknowledged. Plaintiff lastly argues that the public interest here is strong, repeating his contention that the information he seeks is related to disclosures of threats to public safety. As stated before, Plaintiff has failed to support his allegations of government misconduct with sufficient evidence.

Because Exemptions 6 and 7(C) protect from disclosure the existence or non-existence of the requested investigative files, DHS' *Glomar* responses were appropriate. Accordingly, summary judgment is GRANTED on DHS' *Glomar* responses.

F. *Vaughn* Indices

Plaintiff argues that DHS' *Vaughn* indices are wholly conclusory and do not enable Plaintiff to test DHS' exemptions. A *Vaughn* index is an "itemized listing of the non-disclosed records, describing each record and portion withheld, and providing a detailed justification for the agency's withholding, specifying the [applicable] FOIA exemption." *Nat'l Day Laborer Org. Network v. U.S. Immigration and Customs Enforcement Agency*, 811 F. Supp. 2d 713, 733 (S.D.N.Y. 2011). The *Vaughn* index "must adequately describe each withheld document or portion of a document, and must state the claimed exemption with sufficient specificity to 'permit a reasoned judgment as to whether the material is actually exempt under FOIA.'" *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, No. 07 Civ. 3378, 2007 WL 4233008, at *9 (S.D.N.Y. Nov. 30, 2007) (citation omitted). In addition, agency

affidavits submitted in support of an agency's assertion that a claimed exemption applies must set forth with reasonable specificity the nature of the documents at issue, and must explain why the withheld information logically falls within the claimed exemption. *Halpern*, 181 F.3d at 291. The function of the *Vaughn* index is three-fold: "[1] it forces the government to analyze carefully any material withheld, [2] it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and [3] it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." *Id.* (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

The Court finds that the *Vaughn* indices adequately catalogue each redaction of a witness statement, indicate every application of an exemption, and indicate the exemption's relevance. *See* Law Decl. Exs. 1A-1F; Kuehn Decl. Ex. 3. Plaintiff asserts that examination of the *Vaughn* indices of the Reports of Investigation revealed to him in un-redacted form in the MSPB litigation, Ferdinand Decl. Ex. I Parts 1-3, demonstrate the inadequacy of DHS' indices. For example, the index for the first Report of Investigation, Ferdinand Decl. Ex. I Part 1, states:

> The information exempt from disclosure under FOIA consists of details of specific internal agency investigations and specific law enforcement operations, namely personally identifiable information relating to individuals (including agency and law enforcement employees, and third-party individuals) including: names, job function/title information, statements made by agency employees in furtherance of internal agency investigations, involvement of agency and law enforcement employees in specific law enforcement operations and internal agency investigations, and other personal identifying information, which could be used to identify those individuals.

Law Decl. Ex. 1B (Entry No. 7). Plaintiff argues that the entry merely parrots the legal definitions from the case law for the given exemption. Plaintiff is incorrect. The index precisely catalogues the redacted contents of the Report of Investigation. Examination of the un-redacted version of the Report of Investigation reveals that that the document did indeed consist of details

of internal agency investigations (namely, the Gypsy Investigation) and law enforcement operations (the installation of pole cameras and GPS devices), and personal identification information. The redacted lines include the names of individuals, Karen Mary Pace, Steven Kucan, etc., and their identifying information, such as title, pay grade, and duty station. It also redacts statements made in furtherance of an internal agency investigation (namely, the OPR investigation of Plaintiff). The *Vaughn* index could hardly be more specific without identifying the investigation by name, or the actual contents of the report. An agency is not required to disclose so much information that it would thwart the purpose of the exemption invoked. *Pub. Employees for Envtl. Responsibility v. Office of Sci. and Tech. Policy*, 825 F. Supp. 2d 104, 111 (D.D.C. 2011). The Court finds that the *Vaughn* indices here sufficiently describe the redacted documents and correlate the redactions with each particular exemption.

G. Segregability

FOIA also provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Accordingly, the agency must provide a detailed justification for its decision that non-exempt material is not segregable. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). The agency is entitled to a presumption that it complied with its obligation to disclose reasonably segregable material. *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). A district court "must make specific findings of segregability regarding the documents to be withheld" before ruling that an asserted FOIA exemption is applicable. *Sussman*, 494 F.3d at 1116. Non-exempt portions of a document may only be withheld if they are "inextricably intertwined" with the exempt portions. *Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve*

43

*Sys.*, 463 F.3d 239, 249 n.10 (2d Cir. 2006).

Here, DHS reviewed the withheld material and disclosed all non-exempt information that reasonably could be segregated and disclosed. *See* Law Decl. ¶¶ 87, 93, 98, 105-07; Kuehn Decl. ¶¶ 9, 21, 30. Moreover, both ICE FOIA and OIG FOIA undertook additional segregability reviews and produced additional information that had been withheld in previous releases. *See* Law Decl. ¶¶ 50, 64, 106; Kuehn Decl. ¶¶ 11, 12. Plaintiff, again thinking he has a smoking gun in the three un-redacted versions of the Reports of Investigation produced during the MSPB litigation, states that it is clear that full paragraphs were bulk redacted when no such redactions were proper. Examination of the redacted and un-redacted versions side by side reveals that the redacted portions were covered by the exemptions (until they were publicly disclosed) or at the very least, non-exempt portions of the paragraphs are inextricably intertwined with exempt portions. Indeed, most of the bulk redactions were of statements DHS employees made regarding the investigation of Plaintiff, which may be withheld in their entirety. *See Pototsky*, 695 F. Supp. at 1087 (applying Exemption 6 to deny FOIA request for witness statements made during an investigation, in part because of "possibl[e] further intrusion upon the privacy of the witnesses who provided statements in the investigation"); *Jarvis*, 2008 WL 2620741, at *2 (witnesses interviewed and ATF agents and employees involved in an investigation "have significant privacy interests in their names and the details of their statements," and the asserted privacy interest "falls within the statutory exemption").

### H. Nonresponsive Documents and Duplicates

In many of ICE FOIA's releases, pages were redacted and designated "nonresponsive" or "duplicative." Law Decl. ¶ 104. ICE FOIA reviewed each of these pages and determined that they were, in fact, outside the scope of Plaintiff's requests or duplicative of other records

produced. *Id.* Many of the nonresponsive pages were included in ICE FOIA's releases because of the design of the electronic review platform used by the agency to process the released documents. *Id.* Furthermore, each nonresponsive or duplicative page is accounted for in ICE FOIA's *Vaughn* indices. *See* Law Decl., Ex. 1D (Entry Nos. 12, 18, 20, 21, 23, 27, 31, 32); Ex. 1F. Plaintiff contends that DHS' processing, production, and redaction of these nonresponsive and duplicative documents is suspicious, which mandates their un-redacted production. Plaintiff's mere speculation, however, does not constitute evidence of bad faith, and thus the presumption of good faith remains. *See Carney*, 19 F.3d at 812. Plaintiff argues that an e-mail, Ferdinand Decl. Ex. N (Bates No. 2012FOIA03641.001800), initially deemed responsive, but later deemed unresponsive, is evidence of DHS' bad faith. The factual basis of Plaintiff's argument is dubious. He points to no evidence in the record to support this claim, and it appears that the e-mail, which was produced with redactions on August 22, 2013, was not withheld as nonresponsive. *See* Law Decl. Ex. 1F (Entry No. 1) (2012FOIA03641.001799-1809).

Plaintiff also cites no authority stating that an agency must release documents outside the scope of his requests or duplicative documents. Plaintiff is not entitled to documents outside the scope of his request. *See Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 772 n.4 (D.C. Cir. 1988) ("Insofar as the Regulations Log contains information on subjects other than proposed regulations, that information is outside the scope of plaintiff's FOIA request and plaintiffs are not entitled to it for that reason."). *See also Hainey v. U.S. Dep't of the Interior*, 925 F. Supp. 2d 34, 44 (D.D.C. 2013). Similarly, it appears that Plaintiff is not entitled to duplicative documents either. In at least one case, the government openly withheld duplicative documents, without any objection from the court, *see Ely v. F.B.I.*, 658 F. Supp. 615, 617 n.6 (C.D. Ill. 1987), and in another, the court ignored the plaintiff's argument that duplicative documents were not provided,

45

*see Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1487 (D.C. Cir. 1984).

V.   APA and Declaratory Judgment Act – Counts Two and Three

Plaintiff also brings claims against DHS under the APA and Declaratory Judgment Act. DHS argues that Plaintiff's APA and Declaratory Judgment Act claims are duplicative of Plaintiff's FOIA claim, and therefore should be dismissed.  Plaintiff responds by voluntarily withdrawing, without prejudice, his claims under the APA and the Declaratory Judgment Act, acknowledging that "the APA and DJ claims would be duplicative of the requested FOIA relief." Pl. Mem. 64.

Accordingly, summary judgment on counts two and three of Plaintiff's complaint is GRANTED.

VI.   Plaintiff's Cross Motion

Plaintiff's cross motion is DENIED without prejudice to renewal after DHS has provided Plaintiff with the un-redacted documents due on May 16, 2014, as more evidence will have emerged by that time regarding whether additional discovery, an *in camera* review, and an award of attorneys' fees and costs is appropriate.

## CONCLUSION

For the reasons stated above, DHS' motion for summary judgment is GRANTED in part and DENIED in part.  Plaintiff's cross motion is DENIED without prejudice to renewal.  The Clerk of Court is directed to terminate the motions at ECF Nos. 20 and 33.

SO ORDERED.

Dated:  March 24, 2014
        New York, New York

_____
ANALISA TORRES
United States District Judge

46